IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

|                                         |   |                                |
|-----------------------------------------|---|--------------------------------|
| SHAUNCEY KNIGHT,                        | ) |                                |
|                                         | ) |                                |
| Plaintiff,                              | ) |                                |
|                                         | ) | Case No. 12-06004-CV-SJ-NKL-SSA |
| v.                                      | ) |                                |
|                                         | ) |                                |
| MICHAEL J. ASTRUE,                      | ) |                                |
| Commissioner of Social Security,        | ) |                                |
|                                         | ) |                                |
| Defendant.                              | ) |                                |

## ORDER

Pending before the Court is Plaintiff Shauncey Knight's Social Security Complaint [Doc. # 3]. For the reasons set forth below, the Court affirms the decision of the Commissioner.

## I.    Background

Knight seeks review of the Administrative Law Judge's (ALJ) decision denying her disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401, *et seq.*, and supplemental security income benefits under Title XVI of the Act, 42 U.S.C. §§ 1381, *et seq.*  Knight filed both applications on June 11, 2010, alleging disability beginning April 20, 2010. The ALJ denied benefits on August 25, 2011. The Appeals Council has denied Knight's request for review.

### A.    Medical Evidence

1

On February 23, 2010, Knight went to Heartland Regional Medical Center ("Heartland") because of pain in her lower back and right knee. Examination revealed no acute distress, no appreciable spasm or tightness in Knight's back, and some tenderness but no obvious swelling or bruising in her knee. Knight actively demonstrated a full range of motion, although bending increased the pain in her knee. The diagnosis was lumbar strain and bursitis. Knight was instructed to do light stretching several times a day and use a moist heat pack for discomfort.

Knight saw Vickie Kimble, Family Nurse Practitioner, on February 25, 2010. Knight wanted to restart her thyroid medication, obtain medication for depression, and set up a consult regarding her mental health. Knight saw Ms. Kimble again on March 4, 2010, and  Ms. Kimble diagnosed Knight with hypothyroidism.

On March 31, 2010, Knight went back to Heartland because of back pain. She reported minimal function limitation. Examination revealed a decreased range of motion due to pain. She was diagnosed with low back pain, sacroiliac pain, and chronic lumbosacral strain. The report also indicated that Knight was depressed. She was prescribed a small amount of pain medications and some educational materials.

Knight returned to Ms. Kimble on May 5, 2010, reporting back and knee pain during the last two years. Ms. Kimble described Knight's back as normal. Ms. Kimble also noted that Knight's right knee appeared normal and exhibited no tenderness on palpitation, no muscle spasm, normal motion, no muscle weakness, and no tenderness on ambulation. During a follow-up visit on May 19, 2010, Ms. Kimble noted muscle spasms and tenderness on palpitation of Knight's back. Ms. Kimble assessed lower back pain.

2

On July 15, 2010, Dr. Kenneth Bowles, a non-examining medical source, completed a Mental Residual Functional Capacity Assessment. Dr. Bowles concluded that Knight could perform simple work in a low stress work environment with limited public contact.

Knight saw Dr. Thomas Holda on July 26, 2010 to establish a new primary care physician. She reported depression and pain in her lower back, left hip, and right knee. She also reported having bilateral carpal tunnel syndrome surgery on both hands and reported progressing tingling and numbness in her fourth and fifth fingers. Dr. Holda assessed hypothyroidism, depressive disorder, myalgia, myositis, and joint pain. Dr. Holda recommended over-the-counter extra strength Tylenol for pain and started Knight on Celexa for depression. X-rays taken that day of Knight's left hip, right knee, and spine were all unremarkable.

On October 7, 2010, Knight returned to Dr. Holda. She stated that her grandfather fell over a railing on top of her and that she strained her lower back. Examination revealed no tenderness in Knight's spine, a little tightness on the right paraspinal muscle, and a normal range of motion in her hips and knees. Knight reported getting help from light stretching and heat application. Dr. Holda's impression was depressive disorder, hypothyroidism, dyslipidemia, and low back pain. Dr. Holda also reviewed Knight's August 24, 2012 EMG, which showed mild bilateral ulnar neuropathy, and told Knight this condition would likely improve with better control of her thyroid condition.

Knight went back to Dr. Holda on December 8, 2010, again reporting lower back and knee pain. She reported no difficulty moving her hips or knees and stated that using

over-the-counter ibuprofen helped with her back pain. She also indicated that the Celexa helped her depression initially, but that it was not doing as much good at this time. Examination revealed some soreness along the paraspinal muscles, no spinal tenderness, and a normal range of motion in Knight's hips and knees. Dr. Holda's impression was lumbar strain, hypothyroidism, and depression with anxiety. He increased Knight's Celexa and recommended physical therapy for her back pain.

On December 16, 2010, Knight started physical therapy. But when she returned to physical therapy on January 3, 2011, she stated that the exercises were causing pain. Knight then began an aquatic therapy regimen. This did not cause pain and Knight continued the program through February 17, 2011. At this time Knight stated she was doing better and planned to continue the water exercises on her own.

Knight returned to Dr. Holda on June 20, 2011 because of left knee pain. She also related that she has a history of chronic lower back discomfort and that she tried physical therapy but it did not help. In addition, Knight brought paperwork she asked Dr. Holda to fill out designating what she perceived to be her physical and mental limitations justifying disability. Examination revealed lower back stiffness and a scab on Knight's left knee. Dr. Holda's impression was dyslipidemia, knee pain (left, contusion and abrasion on the knee surface), hypothyroidism, depression, and chronic low back pain.

That same day, Dr. Holda signed a Medical Source Statement-Physical ("MSSP") and a Medical Source Statement-Mental ("MSSM"). In his July 20, 2012 report Dr. Holda said: "Information supplied here is what patient states that she feels are her limitations."

4

## B.    Administrative Hearing Testimony

At the administrative hearing on July 20, 2011, Knight testified that she had pain in her lower back and right knee. Due to this pain, she stated that she had trouble bending and could only sit for about five minutes, stand less than five minutes, walk at most three to four blocks, and lift no more than five pounds. For pain relief, she testified that a hot bath and ibuprofen each helped, but neither took the pain away completely. In addition, Knight stated that her thyroid problem made her very tired and restless, but it was better with medication and she had maintained a normal level since about March of 2011. Knight also testified to having lower abdominal pain once or twice a day, some additional problems due to her asthma, and difficulty hearing. Knight also testified about her mental impairments. She stated that being around groups of people made her anxious and that she suffered panic attacks three to four times a week.

A medical expert, Dr. Robert Thompson, also testified at the hearing. Dr. Thompson stated that, in his opinion, there was definite evidence of difficulties with Knight's back and right knee. But due to the absence of specific orthopedic descriptions in the medical records, Dr. Thompson was unable to determine whether Knight met any of the musculoskeletal disability listings. Dr. Thompson also testified that someone with the documented knee difficulty would be limited in the length of time and distance she could walk, but he could not find support for any restrictions based on the back problem.

## C.  The ALJ's Findings

The ALJ found that Knight had the following severe impairments: depression, panic disorder, and back pain. The ALJ also noted that Knight had the non-severe

5

impairment of hypothyroidism. In addition, the ALJ found that Knight's mental impairments had some mild to moderate debilitating effects. Due to a lack of evidence in the record, the ALJ found that Knight's claims of abdomen pain, difficulties due to asthma, and hearing loss were not supported by the medical evidence. .

Upon consideration of the record, the ALJ concluded that Knight had the residual functional capacity ("RFC") to perform light work, with the additional limitations that she could not stand more than 45 minutes at a time for a total of six hours during an eight hour day, climb ladders or scaffolds, or kneel. The ALJ also found that Knight was moderately limited in her ability to understand, remember, and carry out detailed instructions, work in coordination with or proximity to others without being distracted by them, and had difficulty interacting  with the general public. Based on the testimony of a vocational expert and the claimant's age, education, work experience, and RFC, the ALJ determined that Knight could perform substantial jobs existing in the national economy and therefore was not disabled.

## II.    Discussion

### A.    Standard of Review

The Court will affirm the Commissioner's decision denying benefits if it is supported by substantial evidence in the record as a whole.  *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008).  "Substantial evidence is 'less than a preponderance but is enough that a reasonable mind would find it adequate to support' the conclusion."  *Id.* (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 589 (8th Cir. 2004)).  The Court must consider the evidence that supports the decision as well as the evidence contrary to it.  *Id.*

6

An administrative decision will not be reversed, however, simply because the Court might have reached a different conclusion. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011). The Court will defer heavily to the findings and conclusions of the Social Security Administration, *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010), and will disturb the ALJ's decision only if it falls outside the "available zone of choice," *Buckner*, 646 F.3d at 556.

### B. The Undeveloped Record

Knight claims that the ALJ's RFC determination was not supported by substantial evidence because the limitations relied on by the ALJ were not properly documented by the medical evidence in the record. [Doc. # 8 at 8]. The Commissioner responds that Knight is attempting to reverse the burden of production by blaming the ALJ for gaps in the evidence Knight provided. [Doc. # 11 at 8].

Knight first argues that remand is necessary because there was not sufficient medical evidence for the ALJ to reach any conclusion about Knight's RFC. But it is the claimant's burden to prove that she is disabled by furnishing medical and other evidence that describes her medical impairments and the effect of those impairments on her ability to work. *See* 20 C.F.R. §§ 404.1512, 416.912; *see also Medhaug v. Astrue*, 578 F.3d 805, 813 (8th Cir. 2009). The regulations specifically provide, "If you do not give us the medical and other evidence that we need and request, we will have to make a decision based on information available in your case." § 404.1516. Knight contends that: "The record contained no medical evidence that addresses Knight's RFC." [Doc. 8 at 9]. But it is the claimant's burden to prove disability and "the claimant's failure to provide medical

evidence with this information should not be held against the ALJ when there *is* medical evidence that supports the ALJ's decision." *Steed v. Astrue*, 524 F.3d 872, 876 (8th Cir. 2008).

The Court finds that the record in this case did contain sufficient evidence for the ALJ to reach a decision on Knight's claim. The ALJ considered Knight's testimony, during which Knight alleged severe functional limitations caused by her impairments. But the ALJ found that these extreme symptoms were not supported by Knight's treatment records. [Tr. 17]. Although "an ALJ may not disregard subjective pain allegations solely because they are not fully supported by objective medical evidence, . . . an ALJ is entitled to make a factual determination that a Claimant's subjective pain complaints are not credible in light of the objective medical evidence to the contrary." *Ramirez v. Barnhart*, 292 F.3d 576, 581 (8th Cir. 2002) (citations omitted).

The ALJ's decision to discredit Knight's testimony was supported by substantial evidence in the record. Although Knight did repeatedly seek treatment for pain in her back and right knee, none of these examinations resulted in a diagnosis that suggested Knight might suffer from a disabling medical condition. [Tr. 17-20]. Generally, her back and knee were described as normal, with only occasional signs of tenderness or stiffness. [Tr. 17-19]. X-rays of her back and right knee were unremarkable. [Tr. 17]. Knight received very conservative treatment and no examining or treating source ever suggested that Knight should limit her activities. [Tr. 19]. The ALJ concluded, and Knight does not seem to contest, that the medical evidence did not reveal any condition that might explain

8

the severity of Knight's alleged symptoms. [Tr. 19]. As such, the ALJ properly rejected the severe functional limitations Knight described in her testimony.

Knight's claim of mental disability was similarly deficient. While the ALJ determined that Knight was afflicted with depression, the medical evidence indicated that her condition was largely controlled, and had improved, with medication. [Tr. 18-19]. Knight presented no evidence of counseling, mental health care, or hospitalization that might suggest her mental condition would preclude all work. "The absence of any evidence of ongoing counseling or psychiatric treatment . . . disfavors a finding of disability." *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000). In addition, the ALJ found that Knight's claims about the severe functional limitations produced by her mental illnesses were not consistent with Knight's reports about her daily activities. [Tr. 15].

Nonetheless, Knight contends that the ALJ should have ordered a consultative examination to assess Knight's RFC. It is true that the ALJ may order a consultative examination when the evidence as a whole is insufficient to reach a decision. § 404.1519a. In fact, the ALJ has an obligation "to develop the record fairly and fully, independent of the claimant's burden to press his case." *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010) (quoting *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004)). But "the burden of persuasion to prove disability and demonstrate RFC remains on the claimant." *Id*. Remand is appropriate only if there is some showing that the claimant "was prejudiced or treated unfairly by how the ALJ did or did not develop the record." *Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993).

9

Knight fails to show any prejudice resulting from the ALJ's decision not to order a consultative examination. Knight provides only the vague allegation that a consultative examination "might have" revealed clinical evidence supporting Knight's claims about her RFC. [Doc. # 12 at 2]; [Doc. # 8 at 9-10]. This is not a case where the ALJ lacked information about a "crucial issue" due to inconsistencies or ambiguities in the evidence presented. *Cf. Snead*, 360 F.3d at 839 (ordering remand where "no clinical findings existed on the record as developed by the ALJ that would undermine [the treating physician's] report stating that [the claimant] could do no work."). Rather, the ALJ properly determined Knight's RFC based on the record as a whole and Knight can point to no inconsistency in the evidence that would suggest a consultative examination might have altered the ALJ's decision. .

Although Knight initially claimed that the record contained no medical evidence addressing her RFC, [Doc. # 8 at 9], Knight argues for the first time in her reply brief that she did produce evidence that proved a disabling RFC. [Doc. # 12 at 2]. But in making this claim, Knight relies on the MSSP signed by Dr. Holda.  But, as Knight conceded in her initial brief, the MSSP simply reflected Knight's personal allegations about her limitations.[Doc. # 8 at 9]. Dr. Holda explicitly declaimed, "Information supplied here [in the MSSP and MSSM] is what patient states that she feels are her limitations." Even if Dr. Holda had not explained that the reports represented Knight's opinion, rather than his, they would still have been entitled to little if any weight, because they were not supported by any objective medical evidence. *See, e.g.*, *Chamberlain v. Shalala*, 47 F.3d 1489, 1494 (8th Cir. 1995) ("[A] treating physician's opinion is not conclusive in determining

disability status and must be supported by medically acceptable clinical or diagnostic data." (quotations omitted)). Consequently, the Court finds no error in the ALJ's decision to give these reports no weight.

Furthermore, as evidenced above, Knight errs in suggesting that the RFC was not based on "some medical evidence." The ALJ considered the totality of the evidence, including the medical evidence, Knight's reports about her daily activities, Knight's testimony, and the opinions of two non-examining medical experts. Based on this evidence, the ALJ concluded that Knight had the RFC to perform light work. [Tr. 16]. Knight objects to the ALJ's reliance on the opinions of non-examining sources. Although "[t]he opinions of non-treating practitioners who have attempted to evaluate the claimant without examination do not normally constitute substantial evidence on the record as a whole. . . . Certainly there are circumstances in which relying on a non-treating physician's opinion is proper." *Vossen*, 612 F.3d at 1016. The Court agrees with the Commissioner that, in this case, it was reasonable for the ALJ to rely on the expertise of the non-examining doctors in evaluating Knight's medical history.

Finally, the Court cannot agree with Knight's claim that this case is indistinguishable from *Nevland v. Apfel*, 204 F.3d 853 (8th Cir. 2000). In *Nevland*, the court held that the ALJ failed to fully and fairly develop the record where there was "no *medical* evidence about how [the claimant's] impairments affect his ability to function now" and "the ALJ relied on the opinions of non-treating, non-examining physicians who reviewed the reports of the treating physicians to form an opinion of [the claimant's] RFC." 204 F.3d at 858 (emphasis in original). In these circumstances, the court opined

that the ALJ should have sought an opinion from the claimant's treating physicians or ordered a consultative examination. *Id.* Due to the lack of substantial evidence supporting the ALJ's RFC determination, the court reversed and remanded. *Id*. Knight contends that remand is necessary under *Nevland* because the record in her case also lacked medical evidence relating specifically to her ability to function and the ALJ relied on the opinion of a non-examining source in determining her RFC.

In *Nevland*, however, the claimant initially "came forward with medical evidence which establishes that he suffers from medically determinable physical and mental impairments which prevent him from performing his past relevant work." *Id*. at 857-58. This was critical to the court's decision because once the claimant establishes that she is unable to do any past relevant work, the burden of proof shifts to the Commissioner.

Subsequent decisions have explained that this burden shifting was a critical piece of the outcome in *Nevland*. In *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). for instance, the court found *Nevland* "inapposite" because the claimant in *Eichelberger* failed to establish an inability to do past relevant work. The court explained, "The burden is on the claimant to demonstrate that he or she is unable to do past relevant work. Only when the claimant establishes the inability to do past relevant work does the burden of proof shift to the Commissioner." *Id.* at 591. . Similarly, the court in *Casey v. Astrue,* 503 F.3d 687, 697 (8th Cir. 2007). noted that whether *Nevland* applies depends on which step the ALJ is at in the five-step process for evaluating a

12

disability claim.[1] *Nevland* does not preclude the ALJ's reliance on a reviewing physician's report at step four when the burden is on the claimant to establish an inability to do past relevant work." *Id.*; *see also Asher v. Astrue*, No. 11-3166-CV-S-ODS, 2012 WL 287394, at *2 (W.D. Mo. Jan. 31, 2012) (noting that *Nevland* "has been limited in application to step 5 of the sequential analysis.").

While these cases relied on the distinction between steps four and five in the disability analysis, that distinction is not meaningful where, as here, the ALJ skipped step four because the claimant had no relevant prior work. [Tr. 20]. Knight contends that *Nevland* is dispositive, but never addresses the fact that this critical component of the *Nevland* court's analysis is absent from Knight's case. The claimant in *Nevland* provided medical evidence that documented his limited functional capabilities. *See Nevland*, 204 F.3d at 854-56. Where the ALJ erred was in disregarding this evidence and the claimant's testimony about his RFC based solely on non-examining sources. *Id.* at 858. In other words, *Nevland* stands for the proposition that, where the claimant's alleged RFC is otherwise supported by substantial evidence in the record, the ALJ may not rely solely on the opinions of non-examining sources in rejecting the alleged RFC.

In Knight's case, however, the record consistently supports the ALJ's determination and Knight provided no objective evidence to the contrary. Based on the substantial weight of authority holding that it is the claimant's burden to prove her

---

[1] The regulations set out a five-step, sequential evaluation process the ALJ must follow to determine whether an individual is or is not disabled. At step four, the ALJ considers whether the claimant can perform her past relevant work. If she cannot, the ALJ moves on to step five, where the ALJ must determine whether the claimant is able to do any other work. 20 C.F.R. § 404.1520.

limitations initially, and the subsequent cases that limited the holding in *Nevland*, the Court finds that *Nevland* does not require remand because Knight failed to provide any medical evidence that supports her alleged RFC.

In conclusion, the Court finds that the ALJ's decision is supported by substantial evidence in the record. As such, the Court will not remand.

### B.     The RFC Determination

Knight also contends that the ALJ erred in determining her RFC by failing to consider all of her impairments and not providing a narrative discussion linking the limitations in the RFC to the evidence in the record. [Doc. # 8 at 11]. The ALJ has the primary responsibility for determining the RFC based on all the evidence.  *Roberts*, 222 F.3d at 469.  Nonetheless, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record."  *Casey*, 503 F.3d at 697. Consequently, the RFC "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."  SSR 96-8p, 1996 WL 374184 (July 2, 1996).

Knight first contends that the ALJ erred by not discussing Knight's knee impairment at step two of the five step evaluation process. [Doc. # 8 at 12]. The Commissioner concedes that the ALJ should have included the knee impairment at step two, but argues that the error was harmless because the ALJ included the knee impairment in the narrative discussion. [Doc. # 11 at 9].

14

It is clear from the record that the ALJ considered Knight's knee impairment. The ALJ repeatedly referred to Knight's knee impairment in his narrative discussion and fully articulated Dr. Thompson's testimony regarding the limiting effects stemming from Knight's knee difficulties. [Tr. 17-18]. Knight contends that it's not clear whether the ALJ considered Knight's knee impairment in combination with her back troubles when assessing her functional capacity. [Doc. # 12 at 4]. But the ALJ specifically addressed Dr. Thompson's testimony on the limiting effects caused by both the back and knee impairments. [Tr. 18]. The Court "will not set aside an administrative finding based on an arguable deficiency in opinion-writing technique when it is unlikely it affected the outcome." *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004) (quotation omitted). Consequently, the Court finds that, although the ALJ should have included Knight's knee impairment at step two, remand is not necessary because there is substantial evidence that the ALJ properly considered this impairment when determining Knight's RFC.

Knight next contends that the ALJ failed to discuss Knight's EMG, which showed mild bilateral ulnar neuropathy. But the ALJ did reference the EMG and the diagnosis in the narrative discussion. [Tr. 17]. In discussing the EMG, the ALJ cited Dr. Holda's report, where Dr. Holda indicated that the condition would improve with improvement in Knight's thyroid condition. [Tr. 17, 351]. In light of the mild nature of this impairment

Case 5:12-cv-06004-NKL   Document 13   Filed 09/17/12   Page 15 of 16

and the fact that Knight never alleged disabling effects due to this condition,[2] the Court finds that the ALJ adequately considered this impairment in determining Knight's RFC.

Knight's remaining concerns with respect to the RFC determination duplicate her arguments from the section on the undeveloped record.. The Court thus rejects these claims for the same reasons discussed previously.

## III. Conclusion

For the foregoing reasons, the Commissioner's decision is AFFIRMED.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated:  September 17, 2012
Jefferson City, Missouri

---

[2] Knight claims to have provided evidence showing she had difficulty using her hands as a result of mild bilateral ulnar neuropathy. [Doc. # 12 at 5]. But as evidence, Knight can only cite one section of the function report she submitted to the Social Security Agency where Knight circled "Using Hands" among 17 other abilities she claimed her condition affected. [Tr. 188]. In this section, Knight makes no reference to mild ulnar bilateral neuropathy. Notably, Knight did not mention this condition or its affects during her testimony before the ALJ.